## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 05-cr-30047-MAP** |
| | ) | |
| **MICHAEL MARRERO,** | ) | |
| **Defendant.** | ) | |
| | ) | |

### Introduction

This Court should deny the defendant's motion to dismiss on grounds of alleged governmental misconduct because the indictment rests on a consensual drug transaction between the defendant and an FBI Cooperating witness. A review of the recordings made of the conversations leading up to the transaction, and the actual transaction, establishes that the defendant's decision to distribute cocaine base was voluntary, and not a product of coercion or duress.

### Statement of Facts

The government anticipates establishing the following facts at trial:

Beginning in September 2004, and continuing through May 2005, the FBI Gang Task Force used a cooperating witness named Julian Rios ("Rios") to purchase drugs and firearms from suspected Latin King gang members. On January 19, 2005, Rios purchased cocaine base from Felix Morales ("Morales")[1]. Soon thereafter Rios advised the FBI he had learned that the defendant was the source who supplied cocaine base to Morales. Rios gained the defendant's

---

[1] This transaction led to a federal indictment against Morales (United States v. Felix Morales, Docket No. 05-cr-30040-MAP). Morales pleaded guilty on April 10, 2006 to distribution of cocaine base (21 U.S.C. § 841(a)(1)) and being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)). He is scheduled to be sentenced on October 11, 2006.

confidence through their mutual friend Morales.  The FBI then attempted to arrange a controlled purchase directly from the defendant.

On January 25, 2005, Rios met with the defendant for purposes of determining whether he would sell cocaine base to Rios.  When the defendant agreed to sell cocaine base directly to Rios the two parties arranged to meet the following day.  On January 26, at approximately 3 p.m.,  the defendant informed Rios that he was not ready to do the transaction because he had not yet converted his supply of powder cocaine into cocaine base, or crack cocaine.   At about 5:55 p.m. that same evening, the defendant called Rios and indicated he was ready to meet with Rios.  The FBI  advised Rios to tell the defendant that the "customer" for the crack had grown tired of waiting and had departed in order to provide sufficient time for the agents to prepare for the controlled purchase.  Rios and the defendant had the following exchange in a consensually-recorded telephone call:[2]

Marrero:      What's going on?

Rios:            What's going on, man, I been waiting for you, my people fucking left.

Marrero:      Oh, so you're good?

Rios:            Oh.. Why, is that done?  Cause I can see if I can get them  to turn around.

Marrero:      Yeah, it's good now, let's go.

Rios:            Huh, where you gonna meet me at if they come.  Let me just five them a call, see if they fucking turn around.

Marrero:      I can be right there at Little Peach like in, like in two minutes if you want.

Rios:            But your phone is off man.

---

[2]Rios consented to the recording.

2

Marrero:        I know, that's what I'm saying.  I got to go pay it.. I could go...

Rios:           Oh geez!

Marrero:        to Little Peach and go pay the bill, but I could go see you if, I could go see you before if you want.

Rios:           Oh fuck man, ah...

Marrero:        Call them and I'm gonna call you back... I'm gonna call you back in at least two minutes.

Rios:           Alright.  I'll do that, do that then.  Let me call them quick, just call me right back to see if I could, you know, cause I wanted to make some money too.. You know what I mean?

Marrero:        Alright.[3]

A few minutes later the defendant again called Rios and the two had the following

conversation:

Rios:           Hello.

Marrero:        Yeah.

Rios:           "Oye." [Listen]. They'll turn around but they'll be here.. What time is it now?

Marrero:        (inaudible)

Rios:           Yeah, but he gonna meet me at six, he'll be here at six.

Marrero:        Alright, so I'll go pay the bill and then I'll see you right after I pay it.

Rios.           At six o'clock you meet me at Little Peach and from there we'll go to my

---

[3]  A copy of this recording and the corresponding transcript are attached as Exhibit 1A (session # 3) (CD format) and 1B, respectively.  The transcripts submitted with this motion are not official transcripts, but rather draft transcripts prepared by FBI Special Agent Mark Karangekis ("Karangekis") intended to assist the Court in reviewing the recordings.  In preparing the transcripts, Karangekis reviewed the recordings with cooperating witness Julian Rios.

3

house.

Marrero:        Alright.  My phone will be on by that time hopefully.  I'm gonna all you at six o'clock anyway.

Rios:           Yo!

Marrero:        Yo.

Rios:           Spanish - [what is the price].  What you...

Marrero:        Um, I haven't' even, I haven't even do that (inaudible_.

Rios:           Oh, man.

Marrero:        I mean on the scale, it's alright, unless....  Oh, anyways, let me go pay this phone and I'll call you back on this line.

Rios:           Alright, just give me a good deal man. You fucking made me wait all these hours for nothing, man.  You almost got me man, you almost.. These are good peoples, you know what I mean.  Theses people come on the regular, ask Flex.  These people come on the regular for me, man.. They don't deal with nobody else man.

Marrero:        Alright. I got you.  I'll hit you up as soon as, in like a half an hour man.[4]

At 7:30 p.m that same evening, the defendant met Rios at 205 Belmont Avenue in Springfield.  Rios then invited the defendant into his family's apartment to conduct the deal.  The ensuing transaction was captured by both audio and video recorders.[5]

## **Argument**

1.      **The indictment against the defendant rests on a consensual drug deal, not undue coercion by a government informant**

---

[4]The actual recording of this call is contained on Exhibit 1A (Session #  4).  A transcript of this conversation is attached as Exhibit 2.

[5]The video has been marked as Exhibit 3A and submitted for the Court's review.  A transcript of the video is attached and has been marked Exhibit 3B.

4

The defendant's motion should be denied because the defendant knowingly, willingly, and voluntarily sold cocaine base to an FBI cooperating witness, Julian Rios.  The recordings of the contact between Rios and the defendant reveal no indication the defendant was in fear, under duress, or subject to any chicanery (the "Rios forcefully sold drugs to the defendant, and then bought the drugs back for the same price" plot), as alleged by the defendant in his affidavit in support of his motion to dismiss.  Rios's tone of voice throughout his conversations with the defendant reveals the friendly nature of the transaction, with Rios only occasionally sounding exasperated, consistent with a person who was tired of waiting.   At no point does Rios use a threatening tone of voice.

 The video recording of the transaction reveals the defendant  hand something to Rios. Rios then hands U.S. currency to the defendant.[6]  Significantly, the recording shows Rios counting the "buy" money for a second time before handing it to the defendant after the defendant indicated that Rios had short-changed him.  This is obviously not the behavior a person under the threat of violence would exhibit, or the conduct of a person who was returning Rios's drugs to Rios.  Just as significant as the actual conversations between Rios and the defendant - consistent with a drug transaction - is what was not said. At no time did Rios express any actual threats or refer to the defendant's bid to be released from the grips of Latin Kings.

The evidence completely undermines the defendant's incredible claim that he was just returning Rios's drugs to Rios.   Before leaving Rios's apartment,  the defendant, explained the

---

[6]A still photograph of the defendant holding the U.S. currency is attached as Exhibit # 4 in order to assist this Court in identifying the individuals viewed on the video tape.

delay in producing the cocaine base, by stating "I don't keep it hard." Experienced FBI task force agents would testify that based on their respective training and experience, the defendant was referring to "crack cocaine" when he said "hard." Rios would also testify that in the context of the conversation, he firmly believed that the defendant was referring to crack cocaine. To accept the defendant allegations of undue duress as true, this Court would also have to accept the defendant was in effect "role playing" during their telephone calls and meeting.

The defendant's contention [D. Aff. 4] that he was neither actively selling drugs in January 2005 nor actively participating in gang-related activity is contradicted by the circumstances of his arrest on June 15, 2005. At that time, the arresting officers recovered two loaded firearms, a white sock filled with ammunition, two firearm holsters, three digital scales and drug packaging materials from the defendant's bedroom.[7] Furthermore, the defendant was convicted of distributing cocaine in a school zone in 2000, and he served two years in prison.[8] This conviction demonstrates conduct which is consistent with the defendant selling cocaine base to Rios in January 2005, and inconsistent with him holding drugs for the CW, than later selling the drugs back to the CW.

The fact that the Defendant Marrero is the second defendant[9] to allege such coercion does not in itself impart weight to his claim. Neither Ruiz's nor the defendant's respective claims of duress caused by cooperating witness Julian Rios are credible when considering the evidence against the respective defendants, and zero plus zero equals zero.

---

[7]The police report from the arrest is attached as Exhibit #5. The U.S. Attorney's Office deferred to the state court for prosecution of the firearm and ammunition offenses.

[8]Springfield District Court Docket No. 00-23CR-0618.

[9]See Defendant's Exhibit 2 (Ruiz Affidavit)

Even if the defendant's affidavit contained an element of truthfulness, his claim would not call for relief in the form of suppression of the evidence as an "unreasonable seizure" under the 4th Amendment. The exclusionary rule is not a personal constitutional right, but rather a judicially created remedy designed to deter constitutional violations. United States v. Leon, 469 U.S. 897, 906 (1984). Here, there is no evidence the FBI agents acted in bad faith, thus exclusion not proper remedy. Leon, id.

Secondly, defendant has no privacy right in drugs after passing drugs to Rios. He abandoned both the drugs and his 4th Amendment claim at this point. Abel v. United States, 362 U.S. 217, 241 (1960 (warrantless search and seizure of abandoned items did not violate 4th Amendment because "there can be nothing unlawful in the Government's appropriation of ... abandoned property"); United States v. Sealey, 33 F.3d 7, 10 (1st Cir. 1994).

**2.      There was no spoliation of evidence in this case**

The government did not violate the defendant's due process rights by combining the contents of the two bags of cocaine base received from the defendant. In accordance with the Supreme Court's decisions in Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988), California v. Trombetta, 467 U.S. 479, 488-89 (1984), and Illinois v. Fisher, 540 U.S. 544, 545 (2004), a defendant cannot prevail on a constitutional due process claim when the government destroys evidence unless the defendant can demonstrate 1) that the evidence was exculpatory in nature, 2) that the exculpatory nature was apparent prior to destruction of the evidence, 3) that there are no other reasonably available means by which the defendant can obtain comparable evidence, and 4) that the government acted in bad faith. Defendants should not be able to meet this standard with respect to the destruction of inculpatory drug evidence in good faith and pursuant to

established agency procedures. See Unites States v. Garza, 435 F.3d 73, 75-76 (1st Cir. 2006)
(destruction of both the tape recordings of controlled buys with defendant, and the drugs
recovered, which occurred pre-arrest, did not violate defendant's due process rights); United
States v. Femia, 9 F.3d 990, 993-95 (1st Cir. 1993) (no due process violation occurred when
government destroyed tape recordings absent bad faith); United States v. Gibson, 963 F.2d 708,
711 (5th Cir. 1992) (finding Customs' destruction of marijuana before defense examination when
U.S. Attorney did not respond to sixty-day letter did not constitute bad faith on the part of the
government); cf. United States v. Lewis, 40 F.3d 1325, 1340 (1st Cir. 1994) (finding defendants
presented no evidence police acted in bad faith in erasing audiotapes pursuant to routine
procedures).

The defendant has failed to show two necessary conditions to any successful spoliation
claim - bad faith on the part of the government and the exculpatory nature of the evidence.
Instead, the defendant relies up on pure speculation that the original state of the evidence would
have proven to be exculpatory.  His argument fails because both the FBI and the DEA took
reasonable precautions to preserve the integrity of the evidence and the procedures and
safeguards utilized in this case sufficiently protected the defendant's Constitutional rights.  First,
the FBI seized the suspected cocaine base from Rios shortly after the transaction.  Agent
Karangekis then examined the two bags and concluded the appearance of the substance
contained in each bag was cocaine base in the form of crack cocaine.  The substance was then
sent to the Drug Enforcement Administration ("DEA") Northeastern Laboratory for analysis.
The substance contained in each bag, designated "Exhibit # 92" was then examined, as initially

recorded on the DEA Forensic Chemist Worksheet.[10]  After a visual examination, in which DEA

Chemist Wong noted the contents as "beige hard chunks in 2 clear plastic bags," Wong

performed a series of tests on the substances contained in each bag before combining a sample

from each bag and performing examining the composite sample with a mass spectrometer.  The

procedures Wong performed are detailed in the government's letter to counsel for defendant

dated February 9, 2006 and entered as Document 32.[11] Contrary to the defendant's claim [D. Aff.

¶ 16]  that Wong failed to make any distinction between the substances contained in each bag,

the results from Wong's infra-red spectroscopy ("IR") reveal results for both "EX.#92(1)" and

"EX.#92(2)."   This result was provided to the defendant well in advance defendant's expert, Dr.

David Benjamin ("Benjamin"), March 20, 2006 letter, and it is unclear whether Benjamin failed

to notice the individual IR results which was included in the discovery materials, or if the

document was not provided to him.

## Conclusion

A review of the evidence establishes that the defendant's allegation of governmental

misconduct is fabricated from whole cloth and should not be credited by this Court.   Similarly,

the defendant's claim of spoliation is unsupported by any credible facts or reasonable inferences.

Accordingly, the government respectfully requests this Court to deny the defendant's motion

without an evidentiary hearing.

Respectfully submitted,

---

[10]This Forensic Chemist Worksheet (two pages) is attached as Exhibit 6.

[11]The defendant attached this letter as an exhibit to his motion to dismiss and it was
marked as document 43.

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Paul Hart Smyth
             _____
             Paul Hart Smyth
             Assistant U.S. Attorney

Dated: September 8, 2006

# FEDERAL BUREAU OF INVESTIGATION
# UNITED STATES DEPARTMENT OF JUSTICE



**Exhibit
1B**

## 1 CENTER PLAZA, 6TH FLOOR
## BOSTON, MA 02108

| | |
|---|---|
| **Case Number:** | 245D-BS-91441-Spring |
| **CD Number:** | 1D265 |
| **Date:** | 01/26/2005 |
| **Time:** | Track 3 at 17:55:25, |
| **Language:** | English/Spanish |
| **Transcriber:** | SA Mark S. Karangekis |

### Participants:

| | |
|---|---|
| Confidential Witness | CW |
| Norman Andino | NA |
| Michael Marrero, AKA Clumsy | MM |

### Abbreviations:

| | |
|---|---|
| *Italics* | Spoken in foreign language |
| **IA** | Inaudible |
| **UI** | Unintelligible |
| **PH** | Phonetic |
| **[ ]** | Background conversation / Noise |
| **SC** | Simultaneous Conversation |
| **(SIC)** | Stated Incorrectly / As Is |

Case Number: 245D-BS-91441-Spring
Date:   01/26/05
Time:  Track 3 at 17:55:25

(CD recording begins at 17:55:25)

| | |
|---|---|
| Summary | CW is speaking with Norman Andino when he receives an incoming telephone call at 17:57:00. |
| CW | Hey, let me grab this other line, wait a minute, don't hang up, wait, don't hang up, wait. |
| NA | OK, OK. |
| CW | Hello |
| MM | Hello, Tuna? |
| CW | Whose this? |
| MM | Clums |
| CW | Damn Clums, man "*DIABLO*" (IA) ! |
| MM | (IA) |
| CW | Huh? |
| MM | Whats going on? |
| CW | Whats going on, man I been waitin for you, my people fucking left. |
| MM | Oh, so your good? |
| CW | Oh...why, is that done?  Cause I can see if I can get em turned around. |
| MM | Yeah, its good now, lets go. |
| CW | Huh, where you gonna meet me at if they come, let me just give them a call, see if they fuckin turn around. |
| MM | I can be right there at Little Peach like in two minutes if you want. |
| CW | But your phone is off man. |

2

Case Number: 245D-BS-91441-Spring
Date:  01/26/05
Time:  Track 3 at 17:55:25

MM      I know, thats what I'm saying, I got to go pay it... I could go...

CW      Oh geez ! (SC)

MM      to Little Peach and go pay the bill, but I could go see you if, I could go see you before if you want.

CW      Oh fuck man, ah..

MM      Call them and I'm gonna call you back..I'm gonna call you back in at least two minutes.

CW      All right I'll do that, do that then.  Let me call them quick, just call me right back to see if I could, you know, cause I wanted to make some money too...you know what I mean.

MM      All right.

CW      All right, call me right back to see, all right.

MM      All right

CW      All right

Summ    CW switches back to Norman Andino, who has disconnected the call.
ary

3

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE



Exhibit
2

## 1 CENTER PLAZA, 6TH FLOOR
## BOSTON, MA 02108

| | |
|---|---|
| **Case Number:** | 245D-BS-91441-Spring |
| **CD Number:** | 1D265 |
| **Date:** | 01/26/2005 |
| **Time:** | Track 4 at 18:00:19 |
| **Language:** | English/Spanish |
| **Transcriber:** | SA Mark S. Karangekis |

### Participants:

| | |
|---|---|
| Confidential Witness | CW |
| Jose Rodriguez, AKA Gringo | JR |
| Michael Marrero, AKA Clumsy | MM |

### Abbreviations:

| | |
|---|---|
| *Italics* | Spoken in foreign language |
| **IA** | Inaudible |
| **UI** | Unintelligible |
| **PH** | Phonetic |
| **[ ]** | Background conversation / Noise |
| **SC** | Simultaneous Conversation |
| **(SIC)** | Stated Incorrectly / As Is |

Case Number: 245D-BS-91441-Spring
Date:   01/26/05
Time:   Track 4 at 18:00:19

        (CD recording begins at 18:00:19)

| | |
|---|---|
| Summary | CW is speaking with Jose Rodriguez, AKA Gringo, when he receives an incoming telephone call at 18:00:35 from Michael Marrero, AKA Clumsy. |
| CW | Wait a minute, don't hang  up, don't hang up. |
| JR | OK |
| CW | Hello |
| MM | Yeah. |
| CW | *"Oye"!* (Listen !)  They'll turn around, but  they'll be here ...What time is it now? |
| MM | (IA) |
| CW | Yeah, but he gonna meet me at six, he'll be by here at six. |
| MM | All right, so I'll go pay the bill and then I'll see you right after I pay it. |
| CW | At six o clock you meet me at Little Peach and from there we'll go to my house, all right? |
| MM | All right.  My phone will be on that time hopefully.  I'm gonna call you at six o clock anyway. |
| CW | Yo!. |
| MM | Yo! |
| CW | *Cual es el precio?* (What  is the price?)...what you.. *Caul es le prcio, que me va' dar?* (What is the price, what are you going to give it to me?) |
| MM | Um, I haven't even...I haven't even do that (IA). |
| CW | Oh man! |
| MM | I mean on the scale, its all right.  (IA).  Oh, anyways, let me go pay this phone and I'll call you back on this line. |

Case Number: 245D-BS-91441-Spring
Date:  01/26/05
Time:  Track 4 at 18:00:19

CW      All right, just give me a good deal man. You fuckin made me wait all these hours for nothin man.  You almost got me man, you almost...these are good peoples, you know what I

mean.  These people come on the regular, ask Flex.  These people come on the regular for me man..they don't deal with nobody else man.

MM      All right, I got you.  I'll hit you up as soon as, in like a half an hour man.

CW      All right, at six o clock meet me at the Little Peach, all right..

MM      All right.

CW      All right, one.

MM      One.

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE



**Exhibit 3B**

## 1 CENTER PLAZA, 6ᵀᴴ FLOOR
## BOSTON, MA 02108

| | |
|---|---|
| **Case Number:** | 245D-BS-91441-Spring |
| **CD Number:** | 1D266 |
| **Date:** | 01/26/2005 |
| **Time:** | Track 4 at 19:33:00 |
| **Language:** | English/Spanish |
| **Transcriber:** | SA Mark S. Karangekis |

**Participants:**

| | |
|---|---|
| Confidential Witness | CW |
| Michael Marrero, AKA Clumsy | MM |
| Unknown male | UM 1 |
| Unknown male | UM 2 |

**Abbreviations:**

| | |
|---|---|
| *Italics* | Spoken in foreign language |
| **IA** | Inaudible |
| **UI** | Unintelligible |
| **PH** | Phonetic |
| **[ ]** | Background conversation / Noise |
| **SC** | Simultaneous Conversation |
| **(SIC)** | Stated Incorrectly / As Is |

Case Number: 245D-BS-91441-Spring
Date:  01/26/05
Time:  Track 4 at 19:33:00

      (DVD recording  - 19:33:00 to 19:37:30)

      CW is waiting outside location for arrival of Michael Marrero, AKA King Clumsy, Marrero arrives as a passenger in a vehicle, and meets with CW outside and then inside of location.

| | |
|---|---|
| CW | Damn man, holy shit, I don't believe you man....Oooh. |
| MM | You know what it is, I got some, my shit  is still fuckin.... |
| CW | *Valla, Tuna*. (What's up, Tuna)  [introducing self to occupant of vehicle] |
| UM 1 | (IA) |
| MM | (On phone) Hello, hello.. I was just calling you cause my phone was turned off. |
| CW | What you been up to man? [ To occupant of vehicle] |
| MM | Hold on a second, hold on a second man. [To person on phone]  What you need? [To CW] |
| CW | How much you got, I need four balls, how many balls you got? |
| MM | All right  [To CW].  Hello.  [To person on phone] |
| CW | *Que precio me las va'dar*  (What price are you going to give them to me?) |
| CW | *Vente* ! (Come on!)  I live right here, I'm gonna show you where the hell I live.  *Oyite* (listen),  I'm gonna show you where I live man.  Jesus Christ.. *De confiancia* (With confidence) you could come anytime man.  I do this shit at least four times a week man |
| | CW and Marrero climb stairs of apartment building.. |
| MM | Oh yeah. |
| CW | (IA).  I hate fuckin waitin, thats why  (IA). |
| MM | I feel you....I would have to go cook it up myself  (IA). |

Case Number: 245D-BS-91441-Spring
Date:  01/26/05
Time:  Track 4 at 19:33:00

        CW enters into apartment followed by Marrero.

CW     *Que?* (What?)..I'll see you in a minute. [To occupant of house]

        CW enters a bedroom followed by Marrero. CW accepts phone call from SAs checking
        CW's status.  CW gives the appropriate code for stage of the operation. Marrero places
        crack cocaine on bureau.  CW counts money, and hands it to Marrero who also counts.
        Marrero and CW discuss a discrepancy in the money, and hand money back and forth.

CW     Let me see, one twenty, right..*tres.*   One, two, three, four, five, thats one.  One, two,
         three, four, five, thats two.  One, two, three, four, five, thats three.

MM    (IA).

CW     One twenty  a piece you said.

MM    You gave me one, you gave me..

CW     I got it, I got it...One, two, three four, five, thats a hundred and twenty dollars, thats one.
         One, two, three, four, five...

MM    The other thing you gave me, five out of ...

CW     Oh..One, two, three, four, five.  All right, my bad, my bad.

MM    (Laughs)..No, no, I was like...(IA)...I got some people, but I just can't do it like that (IA).

CW     Damn, this shit is, oh my god, I don't believe I waited.....AHHH.

MM    I don't keep it, I don't keep it hard, thats what it is.  (IA).

CW     I got to have it hard.. Three times a week I'll call you for hard, and like twice a week I'll
         call you for powder.  All right.

MM    Yeah.

CW     Yeah, I'm gonna call this guy right now.



# Springfield Police Department
## Arrest Report

### Arrest #: 05-3357-AR
### Call #: 073297

Exhibit
5

Date/Time Reported: 06/15/2005 @ 0600
Arrest Date/Time: 06/15/2005 @ 0601
Booking Date/Time: 06/15/2005 @ 1033
Involves: Gangs
**OBTN: TSPR200503357**
Court: Springfield
Court Date: 06/16/2005 @ 0459
Reporting Officer: OFFICER SEAN CONDON
Assisting Officer: OFFICER ROBERT JACOBSON
Booking Officer: SERGEANT MICHAEL PERRY
Approving Officer: CAPTAIN WILLIAM NOONAN

Signature: _____
Released To: Court
Released: 06/15/2005 @ 1140



| # | DEFENDANT(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | MARRERO, MICHAEL | M | W | 24 | 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 | 413-731-8026 |
|   | 306 OAKLAND ST 1R | | | | | |
|   | SPRINGFIELD MA 01107 | | | | | |

| | |
|---|---|
| HEIGHT: 600    WEIGHT: 170 | HAIR: BLACK    EYES: BROWN |
| BODY: MEDIUM | COMPLEXION: LIGHT |
| DOB: 07/09/1980 | PLACE OF BIRTH: BAYAMON, P R |
| STATE ID: MA09501666 | FBI ID: 327 018 KB5 |
| LICENSE NUMBER: NOT AVAIL. | ETHNICITY: HISPANIC |

_____[APPEARANCE]_____

GLASSES WORN: NO

SCARS: SC ELBOW(L EYEBROW SCAR)
TATTOOS: TAT L FGR(CROSS), TAT LF ARM(HAND OF GOD), TAT R CALF(MIKE)
         TAT LF ARM(IN GOD I TRUST)

| ALIAS LAST NAME | FIRST NAME | MIDDLE NAME | SSN | DOB |
|---|---|---|---|---|
| CONCEPCION | MICHAEL | | NOT AVAIL | 07/09/1980 |
| MIKEY | | | NOT AVAIL | NOT AVAIL |
| MARRERO | | | NOT AVAIL | 07/19/1980 |
| CLUMSY | | | NOT AVAIL | NOT AVAIL |

Springfield Police Department
NARRATIVE FOR OFFICER SEAN CONDON

Ref: **05-3357-AR**

06/15/2005

On this date at about 0600, Off. Dave Askins, Francisco
Otero,Gifford  Jenkins, Alex O'Neil, Robert Jacobson, MA. Trooper Brian Clapprood
and Sgt. Moore as well as FBI SA CJ Sperber, Kyle Zavorotny and I arrested

1.) MICHAEL MARRERO, H/M, 07/19/1980, 584813134 of 306 OAKLAND ST 1R at 306
OAKLAND ST for

A.)lODGER FEDERAL ARREST WARRANT

On this date the above officers executed an arrest warrant on the above
subject, MICHAEL MARRERO at his address 306 Oakland St apartment 1R Springfield.
Officer Askins gained entry through the back door after being led into the
apartment by Mrs Concepcion. After placing this subject in custody in his bedroom
he was advised of his miranda rights by Ma. Trooper Sgt. Moore. At that time the
subject was asked if any weapons were in the home. The subject bowed his head
down and then uttered there were two guns under his mattress in his bedroom were
he was located. The firearms recovered were located well within the subjects
reaching lunging,grabbing area where he was located. These firearms were determed
to be a .9mm/.380 ACP Walther PPK semi auto pistol, serial number A023668
containing a magazine loaded with 4 rnds ammuntion. The other pistol was
determined to be a .25 cal Titan, serail number A98883 containing a magazine
loaded with 1 rnd in chamber & 1 in the magazine. These two firearms were
recovered by Det Gifford Jenkins. Recovered by officer Jenkins in this same
reaching,lunging grabbing area was a white sox containing assorted ammunition,
also recovered in a green bin two holsters. These items were recovered during the
course of obtaining clothing for the subject.
The arrested subject was dressed in a pair of boxer shorts and a t-shirt.
Located in a dresser during the course of obtaining clothing for the subject,
 draw by Officer Askins adjacent to where the subject were lying 3 digital
scales, these scales had visible reminates of green plant matter consistent with
marijuana based on my training and experience. The other scale had reminates of
white powder consistent with that of cocaine based on my training and experience.
The last scale also had reminates of green plant matter with reminates of a
brownish color that appeared to be consistent with that of marijuana as well,
based on my training and experience. Along with these items also recovered on the
dresser were a number of small plastic packets stamped with a label these items
are consistent with that of drug packaging material for street level sale based
on my training and experience. The subjects temporary drivers license was
recovered along with these drug related items. Located in a pair of pants was
$298. by Officer Jenkins and Otero. The note book recovered in the dresser draw
during the course of obtaining clothing for the subject was observed to have
plain view wording consistant with gang activity
The firearms recovered were void of any trigger locks to render them safe.
I obtained a statement on scene from the arrested subjects mother, Maria
Concepcion, in that statement she indicated that her son Michael was the only one
with access to the bedroom where he and the firearms and other items were
located. A complaint related to the items found will  be obtained at a later
date.

.380 tagged#265882

**Springfield Police Department**

**NARRATIVE FOR OFFICER SEAN CONDON**

**Ref: 05-3357-AR**

```
.25 tagged#265886
$298. tagged#265885
Scales& packaging material tagged#265887
Ammunition tagged#265884
Holsters tagged#265883
Notebook tagged#265888
```

Capt Noonan Notified                    Respectfully Submitted

                                        Sean P. Condon 13094/223

**Exhibit 6**

RECEIVED

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION

## FORENSIC CHEMIST WORKSHEET

Page *1* of *1*

| 1. FROM | 2. DATE | 3. SEALS | 4. FILE NO./EXHIBIT NO./LAB NO. |
|---|---|---|---|
| D. MICHEAL | 3-4-05 | ☒ Intact  ☐ Broken  ☐ None | 245D-BS-91441/92/170418 |

**5. DESCRIPTION OF EVIDENCE**

A FBI plastic evidence envelope containing beige hard chunks in 2 clear plastic bags each bag tied w/a knot

**6. SUMMARY OF FINDINGS**

Exhibit # 92 contains cocaine base

Gross Wt.     35.2   grams

Net Wt.        9.7   grams

| 7. EXH. NO. | 8. LAB. NO. | 9. ACTIVE DRUG INGREDIENT | 10. QUANTITATIVE RESULTS | 11. AMT. OF PURE DRUG | 12. RESERVE |
|---|---|---|---|---|---|
| 92 | 170418 | Cocaine base | 81 % | 7.8 grams | 9.1 grams |
| | | | | | |
| | | | | | |

**13. RESERVE EVIDENCE**

Reserve into a lab whirl-pak then into a lab plastic bag

| 14. FORENSIC CHEMIST'S SIGNATURE | 15. DATE REPORTED | 16. REVIEWED BY (initials) & DATE |
|---|---|---|
| Florence Wong | 3-10-05 | CY3/11/05 |

**17. REMARKS**

9041 Looo

FORM DEA-86 (6-00) *Previous editions are obsolete.*

Electronic Version Designed in JetForm 5.2 Version

FILE NO. 245D-BS-91441    EXHIBIT NO. 92    LAB NO. 170418

GROSS WEIGHT: 25.? grams   DEA 294050    JW

DATE OPENED: 3-4-05

① 6.61 grams - 0.44 gram = 6.17 grams

② 3.86 grams - 0.24 gram = 3.62 grams

NET WEIGHT:

9.79 grams   DEA 294056

────────── 9.79 grams
Net Weight

**EVIDENCE SAMPLING PROCEDURES:**

Screened 2 bags by chemical tests, microscope & IR. Combined & ground.

**QUALITATIVE:**

Co SCN, acid        blue
Bromophenol        blue
Furfural            no rxn
H₂O                insol
AgNO₃, HNO₃         no rxn

Microscope:

30% HOAc dissolves
H₂PtCl₆   pale yell feathers
TLTA, acid   tufts

IR: Direct ATR
Results: Cocaine base
for ① and ②
Background - good

MSD: General M.
MEOH + CHCl₃
Results: Cocaine - Composite of 2 bags
Cocaine artifacts
Blank - no peaks

**QUANTITATION:**

METHOD #:    GC: Coc 30 M
STANDARD:    Coc HCl Std # 36 B
DATE PREPARED:  458.3 mg / 250 mls
2-1-05
SAMPLE:

40.4144 grams vol flask + sample
- 40.3121  "    "    "    "
.1023 grams → 50 mls   DEA 294056
10 mls IS Eicosane   81%

.81 × 9.7 grams = 7.8 grams

**RESERVE WEIGHT:**

10.40 grams
- 1.26  + lab whirl - pak
9.14 grams   DEA 294056

**GROSS WEIGHT AFTER ANALYSIS:**

56.0 grams
DEA 294050

**SPECIAL PROGRAMS:**

N/A

**DATE SEALED:**

3-8-05

FORM DEA-86 (6-00) Reverse

*U.S. Government Printing Office: 2002 — 491-387/52008



Exhibit
7

BACKGROUND-170418

170418   EX.#92  (1)
245D-BS-91441
COCAINE BASE

170418  EX.#92  (2)
245D-BS-91441
COCAINE BASE

COCAINE BASE
STD. #35A

cm-1

4000.0     3000     2000     1500     1000     650.0

3·4·05

____ c:\pel_data\spectra\170418-background.sp - FTIR-ATR/DEA 294046

____ c:\pel_data\spectra\170418- direct (1).sp - FTIR-ATR/DEA 294046 245D-BS-91441   EX.#92  170418   direct (1)

____ c:\pel_data\spectra\170418- direct (2).sp - FTIR-ATR/DEA 294046 245D-BS-91441   EX.#92  170418  direct (2)

____ c:\pel_data\spectra\atr stds\cocaine base atr.sp - DEA#272248 Cocaine Base NEL STD#35A, ATR, direct CMG 1MAY03